**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

VIRGINIA DEAN SLAUGHTER, et al.

          Plaintiffs

     v

MAYOR AND CITY COUNCIL
OF BALTIMORE, et al.

          Defendants

:

:

:

:

:

:

Civil Case No. L-10-1157

o0o

**MEMORANDUM**

This case arises out of the tragic death of Racheal Wilson, a Baltimore City firefighter recruit in training, during a "live burn" training exercise. Ms. Wilson's family and personal representative ("Wilson's Estate") brought suit against the Mayor and City Council of the City of Baltimore, as well as three individual members of the Baltimore City Fire Department. Now before the Court is the Defendants' Motion to Dismiss the Amended Complaint. Docket No. 25. The issues have been fully briefed, and on November 8, 2010 the Court held a hearing. For the reasons stated herein, the Court will, by separate Order, GRANT the Motion to Dismiss with respect to Plaintiffs' § 1983 claim and DISMISS the remaining counts for lack of jurisdiction.

## I.      FACTUAL BACKGROUND

The following facts are alleged in Plaintiffs' Amended Complaint. On February 9, 2007, Racheal Wilson participated in a "live burn" training exercise, wherein recruits battle a live blaze purposely set by Fire Department instructors. Wilson was a member of the first team to enter 145 South Calverton, a three-story rowhouse. Her assignment was to carry the hose nozzle for her

team, though her hose was not "charged" with water pressure. Despite the presence of fires on the first and second floors, Wilson's team was instructed to bypass them and proceed directly to the third floor. On their way upstairs, the team encountered severe conditions that required them to stop and confine another fire before proceeding. Upon arriving on the third floor, the team was confronted with a conflagration so powerful that evacuation became the only option. The recruits began to escape through a small window in the back of the third floor that opened onto a section of the second-story roof.

Though Wilson's teammates were able to make it out onto the roof, Wilson had trouble getting through the window. Three times a fellow recruit tried to pull her through, only to have her slip back into the house. Finally, a crew member still inside managed to lift Wilson by the legs and others pulled her, unconscious and unresponsive, onto the roof outside. Teammates administered CPR, but to no avail.

The Amended Complaint alleges that conditions inside 145 South Calverton were wholly inappropriate for the exercise conducted there, and that the planning and execution of the exercise failed to conform to requirements promulgated by both the National Fire Prevention Association and the Baltimore City Fire Department. Defendants, the Complaint charges, recklessly created an inferno that quickly burned out of control. Among other conditions, the Plaintiffs cite that some walls and ceilings were torn down to expose the framing and allow the fire to spread more quickly, an accelerant (excelsior) was stuffed behind other walls, the building was not cleared of inflammable debris, and at least seven separate fires were set. Wilson's Estate similarly takes issue with the recruits' gear and training, claiming that many participants were not given a proper breathing apparatus or protective clothing, that the water pressure was inadequate to address the number and strength of the fires, that there was no evacuation plan, and

that the recruits were never given a pre-burn walkthrough or even instructed as to the basic construction of the building. Finally, the Complaint alleges that the instructors in charge of the exercise were similarly unprepared: they were not equipped with radios to report developing problems, several had never been trained in live fire training exercises, they were unfamiliar with the recruits, they set the fires before confirming that the recruits were ready to begin, three instructors left their crews, and those with the authority to terminate the exercise failed to do so when it became clear that lives were in danger.[1]

Wilson's Estate sues under 42 U.S.C. § 1983, claiming that the Defendants' conduct violated Wilson's Fourteenth Amendment right to life. Analogous State Constitutional claims are advanced under Article 24 of the Maryland Declaration of Rights. Finally, Wilson's Estate brings wrongful death and survival actions under Maryland tort law. The Defendants have moved to dismiss all counts for failure to state a claim.


## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of his claim. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. The court must, however, "assume the veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

---

[1]     Defendants deny that the training exercise was poorly planned. Because of the procedural posture of the case, a motion to dismiss, the Court must accept as true the allegations in the complaint. This means crediting the allegation that the exercise was recklessly conceived and carried out.

## III.     DISCUSSION

Wilson's Estate has brought a § 1983 action to which it appends a number of state claims. The viability of this action in federal court hinges on the viability of the § 1983 count. If the federal count falls short, the Court will dismiss the entire case due to the lack of a federal connection.[2]

The Court notes initially that Wilson's Estate applied for and received pension benefits from the Fire and Police Employees' Retirement System as a result of her line-of-duty death. Where a state provides for such compensation, it will normally be the exclusive remedy for injury or death occurring on the job. Section 1983 was never intended as a federal means of redress for those injured by the negligence of so-called "state actors." Rather, it creates a federal cause of action in favor of individuals whose constitutional rights have been abridged by those acting under color of state law. Consequently, in order to prevail, Wilson's Estate must demonstrate that the Defendants' conduct rose to the level of a constitutional violation.

The Due Process Clause of the Fourteenth Amendment is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 128 (1992). Section 1983, therefore, does not create a cause of action for negligent conduct. County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). Either an intent to harm or deliberate indifference is required. See Waybright v. Frederick Cnty., MD Dep't of Fire and Rescue Servs., 528 F.3d 199, 206 (4th Cir. 2008). Wilson's Estate does not allege that the City intended to harm Ms. Wilson.[3] It does, however, contend that the fire exercise was shockingly ill-conceived

---

[2]     Because this case is at such an early stage, with no discovery having been conducted, the Court would decline to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3).

[3]     While the Plaintiffs' Amended Complaint and Opposition to the Motion to Dismiss both make reference to "intentional acts" and an intent to subject Wilson to extreme and hazardous conditions, Plaintiffs admit "that the

and ill-executed.  Plaintiffs maintain that the Defendants' deliberate indifference to the dangers posed to the recruits is actionable under § 1983 because it "shocks the conscience."

The case law uniformly holds that mere negligence is insufficient to state a cause of action under § 1983.  The case law diverges, however, concerning when a Defendant's deliberate indifference can suffice.  One line of cases holds that deliberate indifference is actionable if the governmental actors had an opportunity to deliberate before acting and their conduct is severe enough to shock the conscience.  See, e.g., Estate of Owensby v. City of Cincinnati, 414 F.3d 596, 602 (6th Cir. 2005); Wilson v. Lawrence Cnty., 260 F.3d 946, 956–57 (8th Cir. 2001).  A second line of cases finds that deliberately indifferent conduct may rise to the level of a constitutional violation when the state itself creates the danger that causes injury.  See, e.g., DeShaney v. Winnebago Cnty. Dept. of Social Services, 489 U.S. 189 (1989); Pinder v. Johnson, 54 F.3d 1169 (4th Cir. 1995).  A third line of cases requires a "special relationship" between the plaintiff and the defendant in order to trigger deliberate indifference liability.  See, e.g., Waybright, 528 F.3d 199 at 207; Rivera v. Rhode Island, 402 F.3d 27, 34 (1st Cir. 2005). This special relationship is all but synonymous with a custodial relationship, and exists when "[s]ome sort of confinement" is present, such as occurs when the plaintiff is incarcerated, institutionalized, or the like.  Pinder, 54 F.3d at 1175.

The Fourth Circuit Court of Appeals has rejected the "opportunity to deliberate" line of cases, holding that "the case law as a whole is against a general rule that time to deliberate transforms negligent error into constitutionally shocking conduct."  Waybright, 528 F.3d 199 at 206.  In this Circuit, therefore, the opportunity to deliberate, standing alone, is insufficient to create liability under the deliberate indifference test.

---

Amended Complaint does not allege a specific intent to harm . . . ."  Pls.' Resp. 12.  Plaintiffs' counsel also conceded at oral argument that, while the Defendants deliberately created the conditions that caused Ms. Wilson's death, they did not intend for her to be injured or killed.

This Circuit does approve of the "special relationship" exception, which has its origins in DeShaney.  In that case, the Supreme Court found that an affirmative duty to protect an individual from harm inflicted by third parties may arise "when the state by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself . . . ."  489 U.S. at 200.  The appeals court has applied the exception narrowly.  It applies only when there is "some sort of confinement of the injured party—incarceration, institutionalization, or the like . . . ."  Pinder, 54 F.3d at 1175.  The theory behind the exception is that the state, by confining the injured person, has deprived him of the opportunity to protect himself.

The Fourth Circuit comprehensively discusses this exception in Pinder.  In that case, a police officer arrived at the home of Carol Pinder to find Pinder's abusive, violent ex-boyfriend subdued by a neighbor after physically abusing Pinder and threatening her life and the lives of her children.  The officer arrested the ex-boyfriend, and assured Pinder that he would be detained overnight, meaning that it would be safe for Pinder to return to work that evening.  Despite this assurance, the officer charged the ex-boyfriend only with two apparently non-incarcerable misdemeanors, and as a result he was released on his own recognizance.  Once free, the ex-boyfriend returned to Pinder's house and set fire to it, killing the three children who were asleep inside.  Id. at 1172.  Pinder brought a § 1983 action charging, inter alia, that the officer and the city had violated their affirmative duty to protect her and her children and so had deprived them of their Due Process rights.

The Fourth Circuit, relying heavily on DeShaney, held that the lack of a custodial relationship between Pinder and the state was the deciding factor, and that without such a limitation on her liberty Pinder "was due no affirmative constitutional duty of protection from

the state . . . ." Id. at 1174–75. The court reached this conclusion even though Pinder would have remained home that night to protect her children but for the officer's assurance that the ex-boyfriend would be detained. In the instant case, Wilson's Estate relies on the authority that the Defendants had over Wilson, but it does not argue that Ms. Wilson and the City had a qualifying special relationship.

Moreover, the D.C. Circuit in a similar case persuasively rejected the idea that the state has a heightened obligation towards firefighters, even when local law restricted their ability to terminate their employment or to leave the District of Columbia. See Phillips v. D.C., 455 F.3d 397, 405 (D.C. Cir. 2006). In that case, two firefighters died while battling a multi-alarm blaze, allegedly due to the fire chief's deliberate indifference to his duty to see that the department complied with its own standard operating procedures. The Phillips court ruled that the restrictions placed on firefighters, which distinguish them from at-will employees "are not imposed; rather, a firefighter agrees to them as conditions of employment." Id. at 405 n. 10. The Plaintiffs cannot, therefore, avail themselves of the "special relationship" line of cases.

The Fourth Circuit Court of Appeals has also approved the "state created danger" exception, which can operate outside of the traditional custodial context. For example, in Pullium v. Ceresini, 221 F. Supp. 2d 600 (D. Md. 2002), a county police officer brought the plaintiff's estranged and visibly intoxicated husband to her home and, against her protests that she feared for her safety, forced her to let the husband enter. As soon as the officer departed, the husband assaulted Mrs. Pullium. The Court denied the defendants' motion to dismiss, finding that "[w]hile the Fourth Circuit may be reluctant to impose liability on police officers whose omissions create increased dangers from third parties, there is no indication that the court would

have the same reluctance where it is an officer's affirmative conduct that creates the danger." <u>Id.</u> at 605.

The Fourth Circuit has been careful, however, to limit the state-created danger exception to cases in which the state has compelled the injured person to encounter the danger.  <u>See</u> <u>Waybright v. Frederick Cnty., MD Dep't of Fire and Rescue Servs.</u>, 475 F. Supp. 2d 542, 553 (D. Md. 2007).  This limiting principle operates in workplace safety cases.  Section 1983 does not require the state to provide a workplace that is free from unreasonable risks of harm.  <u>Collins</u>, 503 U.S. at 128 ("We . . . are not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.").  If the employee voluntarily encounters the risk, the exception does not apply.

The D.C. Circuit also addressed the state-created danger exception in <u>Phillips</u>. Confronted with the plaintiffs' argument that the D.C. fire department's failure to follow standard procedure constituted "avoidable state-created *additional* risk," the court held that while the fire chief's deliberate indifference may have increased the firefighters' exposure to risk, "the risk itself—injury or death suffered in a fire—is inherent in their profession. . . . [T]he District is not constitutionally obligated by the Due Process Clause to protect public employees from inherent job-related risks."  455 F.3d at 407.

Whatever the theory of recovery, the principles of federalism counsel that federal courts tread lightly when the plaintiff's claims arise in areas traditionally regulated by the states.  The Fourth Circuit admonishes that "where a claim sounds both in state tort law and substantive due process, state tort law is the rule and due process the distinct exception."  <u>Waybright</u>, 528 F.3d

199 at 205. Because of this principle, a strong presumption exists against recognizing § 1983 claims that overlap state tort law claims. Id.

With this background in mind, the Court turns to the Plaintiffs' case. This case presents factors of the type that have, on occasion, prompted other courts to recognize a § 1983 cause of action. Plaintiffs allege that the City created a shockingly dangerous condition to which Wilson was subjected. As an inexperienced trainee, she was not in a position to evaluate the risk. Because the exercise was designed to present unexpected situations, perils were deliberately hidden from Wilson and her fellow trainees. Unlike Pinder, this is not a case in which the state failed to protect an individual from harm caused by a third person. The state itself created the exercise and lit the fires. Based on these allegations, the Plaintiffs urge the Court to deny the Motion to Dismiss and permit the case to proceed to discovery.

While the Court is cognizant of these factors, they do not combine to create a § 1983 claim as recognized in this Circuit. Because Ms. Wilson voluntarily participated in the exercise, the Plaintiffs cannot satisfy the "state-created danger" test even if the City acted with deliberate indifference. The theory behind the state-created danger exception is that a state actor should be liable when that actor affirmatively puts a victim in harm's way without giving the victim a choice about whether to face the peril or not. The Court recognizes that the training exercise was not optional. Had Wilson refused to participate, she would not have graduated. Nevertheless, in a § 1983 case Wilson's option of declining to participate is sufficient to defeat the claim. In such a situation, the Court cannot say that the actions of the Fire Department, however reckless they may have been, rise to the level of a constitutional violation.

In reaching this conclusion, one Fourth Circuit case is particularly instructive. In Waybright v. Frederick County, MD Department of Fire and Rescue Services, 528 F.3d 199 (4th

Cir. 2008), Andrew Waybright, a Frederick County firefighter recruit, died of heat stroke during a training session conducted in 84-degree weather without water. Waybright's parents filed a § 1983 claim against the county, the fire department, the supervising firefighter, and others. After rejecting the opportunity-to-deliberate line of cases and finding that Waybright's status as a firefighter trainee was insufficient to invoke the "special relationship" exception, the Fourth Circuit considered whether the state-created danger theory might provide a path to recovery. Waybright's parents argued that "the training session should qualify as a state-created danger because [the supervising firefighter] had used his authority to create an opportunity for danger that otherwise would not have existed and thereby knowingly put Waybright in harm's way." Id. at 207 (internal quotations omitted). In denying the claim, Judge Wilkinson, writing for a unanimous panel, invoked the Supreme Court's holding in Collins v. Harker Heights that due process does not impose a duty on municipalities to provide their employees with a safe workplace or warn them against risks of harm. Id.

Rachael Wilson's case differs from Andrew Waybright's in several respects. The dangers of hyperthermia are well known, but the full dangers awaiting Wilson were hidden from her. Waybright could have stopped exercising when he began to feel dizzy, but manfully insisted on finishing with his class. Once inside the building, Wilson could not have extricated herself from the live burn exercise, and certainly not without leaving her teammates in greater danger, battling the blaze without her.

Despite these differences, however, Judge Wilkinson's reasoning is equally applicable to this case. Both Waybright and Wilson, in essence, claim "an unsafe workplace that caused a prospective employee harm." Id. The Fourth Circuit has deliberately narrowed the circumstances under which such non-intentional injury is actionable. The Waybright court was

justifiably worried that a broader exception would result in "federal displacement of state authority over state activities, for it would potentially set up a federal question whenever an accident happens during activities sponsored by the state." Id. at 208.

This ruling, it should be noted, does not leave the Plaintiffs without a remedy. As mentioned, they retain all rights afforded under the Workers' Compensation system, the Fire and Police Employees' Retirement System, state tort law, and Article 24 of the Maryland Declaration of Rights. The Court's ruling today concerns only whether Plaintiffs are entitled to take advantage of § 1983, which applies primarily to cases in which the harm was intended and only tangentially to cases in which the defendant acted recklessly but without the intent to injure.

## IV.    CONCLUSION

For the foregoing reasons, the Court will, by separate Order of even date, GRANT Defendants' Motion to Dismiss (Docket No. 25) with respect to Plaintiffs' § 1983 claim and DISMISS the remaining counts for lack of jurisdiction.

Dated this 3rd day of December, 2010.

/s/

_____
Benson Everett Legg
United States District Judge
